IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA A. TURNIDGE,

                Plaintiff,

    v.

ODOC, et al.,

                Defendants.

Case No. 2:25-cv-01435-MO

ORDER

MOSMAN, District Judge.

This prisoner civil rights case comes before the Court on Plaintiff's Motion (#12) asking the Court to strike Defendants' Answer (#9), and on his Motion for Preliminary Injunction (#15) wherein he asks the Court to order Defendants to dim the lighting in his cell at the Two Rivers Correctional Institution ("TRCI"). The Motion to Strike is denied on the basis that the Answer is sufficiently pled. For the reasons that follow, the Motion for Preliminary Injunction is also denied.

## **STANDARDS**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

1 - ORDER

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). A plaintiff may also qualify for a preliminary injunction by showing that there are serious questions going to the merits of his claim and that the balance of hardships tips sharply in his favor, so long as the other *Winter* factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127. 1134-35 (9th Cir. 2011). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319-20 (9th Cir. 1994).

## DISCUSSION

According to Plaintiff's Affidavit supporting his Motion for Preliminary Injunction, he is a military veteran who has a medically documented diagnosis of post-traumatic stress disorder ("PTSD"). Affidavit of Joshua A. Turnidge, (#17), ¶¶ 3-4. He asserts that Defendants' use of high-intensity lighting is causing him sleep deprivation and insomnia, physical and psychological harm, and suicidal ideation. *Id.* at ¶ 6. He asserts that Defendants' refusal to provide him with less severe lighting options within his cell violates the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Fourteenth Amendment's Equal Protection Clause. He asks the Court to issue an order that requires Defendants to: (1) immediately suspend the use of high-intensity lighting in his cell; (2) restrict all use of bright lighting to emergencies only, and instead rely only upon the lower intensity security lights at the institution or flashlights; (3) install alternative cell lighting consistent with ANSI/IES RP-37 standards for confined spaces; and (4) provide him with accommodations under the ADA and the Rehabilitation Act.

2 - ORDER

I.    **Likelihood of Success on the Merits**

A.    **Eighth Amendment**

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to establish an Eighth Amendment violation, a prisoner must make an objective showing that he was deprived of something "sufficiently serious" that implicates the "minimal civilized measure of life's necessities." *Id.; Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Plaintiff must also make a subjective showing that the deprivation he endured was the result of Defendants' deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834-35. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835.

It has long been the law in the Ninth Circuit that excessive lighting can implicate the Eighth Amendment because adequate lighting is part of adequate shelter required by the Eighth Amendment. *See Hoptowit v. Spellman,* 753 F.2d 779, 783 (9th Cir. 1985). In *Keenan v. Hall,* 83 F.3d 1083 (9th Cir. 1996)*,* the Ninth Circuit found a triable issue of fact where the prisoner claimed he was subjected to two large fluorescent lights that were kept on 24 hours a day for six months that inhibited his sleep and contributed to psychological issues. *Id.* at 1088, 1091. Almost 20 years later, the Ninth Circuit clarified that "*Keenan* did not clearly establish that constant illumination violates the Eighth Amendment when done for a legitimate penological purpose." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013).

In this case, the record before the Court reveals that cells at TRCI have no open walls and only a small window located within the door to each cell. Declaration of T. Rumsey (#22), ¶ 9.

3 - ORDER

This design makes it more difficult for security staff to supervise the AICs. To assist with supervision, prison officials installed what is referred to as "main cell lighting" that is comprised of a single four-foot linear light placed behind a diffuser with its dim side facing out. Declaration of G. Thompson (#23), ¶ 8. On a sunny day, the light output from the main cell light in Plaintiff's cell measures 33 Lumens. *Id.* at ¶ 10.

The main cell lights at TRCI are generally utilized during times of greater activity among the prison population. *Id.* at ¶ 11. More specifically, the main cell lights are turned on in the mornings for "several hours" from the mandatory 6 a.m. wakeup through breakfast and cell sanitation. Rumsey Declaration (#22), ¶¶ 11-12. These main lights are also utilized during "line movements" or when staff members have a specific need to have greater visibility into a cell for security checks. *Id.* With the exception of wakeup through breakfast and cell sanitation in the mornings, the main lights are only on for approximately five minutes if they need to be utilized. *Id.* at ¶ 12. The rest of the time, the main lights are controlled by the AICs who inhabit the cells. *Id.* at ¶ 11. Thus, although Plaintiff declares that he has been "subjected to continuous 24-hour cell lighting," this does not appear to be the case.[1] Declaration of Joshua A. Turnidge (#25), ¶ 1(a).

There is also a secondary lighting system in the cells which is referred to as "security lighting." The security lights come on when the main lights turn off to provide at least some illumination in the cells. The security lights are largely covered with black electrical tape to

---

[1] Defendants' evidence is also consistent with Plaintiff's allegation that the lights are not actually left on constantly, but are instead subject to "constant manipulation" throughout the day. Turnidge Declaration (#25), ¶ 1(b).

promote a dimming effect, and they produce approximately 2.3 Lumens, thus resulting in far softer lighting than the main lights. Thompson Declaration (#23), ¶ 14. Plaintiff asks the Court to restrict lighting in his cell at all times only to the security lighting, or to handheld flashlights in emergency situations.

As discussed above, even 24-hour bright lighting does not necessarily violate the Eighth Amendment. In this case, Plaintiff does not face such constant lighting from the main lights about which he complains. Instead, the main lights are only routinely on in the mornings for wakeup, breakfast, and cell sanitation. They are otherwise only turned on as needed, and even then only in increments of approximately five minutes. This record reveals that Plaintiff is not subjected to the kind of incessant bright lighting that might offend the Eighth Amendment in the absence of a legitimate penological justification. In addition, his suggestion that TRCI utilize only dim security lighting or flashlights at all times (save emergencies) presents an obstacle to the legitimate penological objective of institutional security. Accordingly, this reveals that Plaintiff's likelihood of success on the merits of his Eighth Amendment claim is low.

### B.    ADA and Rehabilitation Act

Plaintiff next alleges that Defendants' conduct violates the ADA, codified at 42 U.S.C. § 12132. The ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

In order to prove such a claim, Plaintiff must establish that he: (1) is a disabled person; (2) is otherwise qualified to receive the benefits of a public service, program or activity; and that

5 - ORDER

the defendants' actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical disability. *Duffy v. Riveland,* 98 F.3d 447 (9th Cir. 1996).  An individual is considered disabled under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Deppe v. United Airlines,* 217 F.3d 1262, 1265 (9th Cir. 2000). For purposes of this case, the test for the Rehabilitation Act is functionally the same because Defendants do not dispute that TRCI receives federal assistance. *See, e.g., Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002) ("The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs.").

As set forth above, Plaintiff presents evidence that he has been diagnosed as suffering from PTSD, but he has not alleged that he has been denied participation in a service TRCI offers because of that disability. Instead, he represents that he is more significantly impacted by lighting than a prisoner without PTSD. He has not identified how he has been excluded from participating in a program by virtue of having PTSD and, in this regard, his chance of success on the merits of ADA and Rehabilitation Act claims is therefore low.

## C.    <u>Equal Protection</u>

 Plaintiff also attempts to cast his claim as arising out of the Fourteenth Amendment's Equal Protection Clause. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a

protected class." *Furnace v. Sullivan,* 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted).

Plaintiff alleges he is a member of a protected class by virtue of his PTSD. People with mental illness do not, however, make up a protected class. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 445-46 (1985). Because he is not a member of a protected class, he must show that he was treated differently than others similarly situated, and that there is no rational basis to support the disparate treatment. *Mayner v. Callahan*, 873 F.2d 1300, 1302 (9th Cir. 1989). Because Plaintiff is subject to the same main and security lighting procedures as all other TRCI prisoners, he has little probability of success on this claim.

## II.    <u>Irreparable Injury</u>

Having established that Plaintiff has a low likelihood of success on the merits with respect to any of his claims, the Court proceeds to assess whether he is likely to suffer irreparable harm from the conditions about which he complains. Plaintiff maintains that he suffers from sleep deprivation, but the main lights are only on for any extended period of time in the mornings following mandatory wakeup. Thereafter, they are used on an as-needed basis in five-minute increments. This suggests Plaintiff has sufficient opportunity to sleep. His assertion that he is being driven toward mental breakdown, including suicidal ideation, by being incessantly subjected to bright lighting is not supported by the record which reveals that the main cell lights are primarily on only during the morning (including during the time he is at breakfast), and is otherwise mostly within his control. The Court therefore does not find Plaintiff has demonstrated a reasonable likelihood that he will suffer irreparable injury by not granting him immediate injunctive relief.

7 - ORDER

III.   **Balance of Hardships and Public Interest**

Because Plaintiff has a low likelihood of success on his claims, and as he has also not demonstrated a likelihood of irreparable injury, the balance of hardships and the public interest do not factor materially into the disposition of his Motion for Preliminary Injunction. Given the foregoing, preliminary injunctive relief is not warranted.

## CONCLUSION

Plaintiff's Motion to Strike (#12) and his Motion for Preliminary Injunction (#15) are denied.

IT IS SO ORDERED.

_1/29/2026_
      DATE

*Michael W. Mosman*
Michael W. Mosman
United States District Judge

8 - ORDER