IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

JOSHUA A. TURNIDGE,

Plaintiff,

v.

ODOC, SUPERINTENDANT TWO
RIVERS CORRECTIONAL
INSTITUTION, CAPTAIN HERRON,
TRCI Security Captain, KAYCIE
THOMPSON, TCRI ADA
Coordinator/Executive Assistant,

Defendants.

No. 2:25-cv-01435-MO

OPINION AND ORDER

MOSMAN, J.,

Plaintiff Joshua A. Turnidge, an adult in custody at the Two Rivers Correctional Institution (TRCI), brings this action against the Oregon Department of Corrections (ODOC) and three ODOC staff employed at TRCI. Turnidge alleges that the 24-hour illumination and manipulation of lights in his cell violates his federal constitutional and statutory rights. The parties filed cross motions for summary judgment. [ECF Nos. 27 and 29].[1] As explained below, I deny Turnidge's Motion, grant Defendants' Cross Motion and dismiss this action with prejudice.

---

[1] On March 9, 2026, I notified Turnidge of what he needed to do to oppose Defendants' Cross Motion. Advice Notice, [ECF 32]; *see Rand v. Rowland*, 154 F.3d 952, 958–59 (9th Cir. 1998) (en banc).

1 – Opinion and Order

## BACKGROUND

Turnidge was transferred to TRCI in June 2020 and placed into "incentive housing." Compl., [ECF 1] at ¶¶ 13–14. The undisputed record establishes that TRCI's cells have fully closed walls and only a small window located in each cell's door. Rumsey Decl., [ECF 31] at ¶ 7. This design offers prisoners more privacy but makes it more difficult for security staff to supervise them. *Id.* at ¶ 7. For security reasons, there are two types of lights in every cell: "main cell lights" and "security lights" and one or the other is always on. *Id.* at ¶ 8; [ECF 1] at ¶ 15.

Prisoners control the main light in their cell, with some exceptions. *Id.* at ¶ 9. These exceptions include every morning between the 6am mandatory wake up and the end of breakfast, during cell sanitation and line movements, and whenever security staff needs increased visibility into cells. *Id.* The main lights are on for several hours during breakfast and cell sanitation, and are on for about five minutes when ODOC staff turn them on at other times. *Id.* at ¶ 10. To increase prisoner comfort, ODOC installs the main lights "with [the] dim side facing out and . . . behind a diffuser, which absorbs and scatters the light." Thompson Decl., [ECF 30] at ¶ 7.

When the main lights are off, the security lights come on. [ECF 31] at ¶ 11. "The security lights are installed in a way that substantially limits their output, but remain at a level sufficient for security staff to perform security/tier checks." *Id.* To increase prisoner comfort, "ODOC covers a large portion of [the security light's] lightbulbs with black electrical tape prior to installing them." [ECF 30] at ¶ 11.

Turnidge reported to Defendants that he suffered injuries because of the 24-hour cell lighting and provided Defendants with "peer reviewed scientific studies" to support his claims of harm, which include sleep deprivation, headaches, suicidal ideations, insomnia, and severe irritability. [ECF 1] at ¶¶ 23–24. After exhausting his administrative remedies, Turnidge filed this

2 – Opinion and Order

lawsuit alleging violation of the Eighth Amendment, the Fourteenth Amendment, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). *Id.* at ¶¶ 27–38.

## DISCUSSION

### I.    Legal Standard

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no real dispute about a genuine issue of material fact, if when "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (cleaned up); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial"). On the other hand, a genuine dispute of material fact exists and precludes summary judgment "if a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Id.* The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita*, 475 U.S. at 586. In doing so, the opposing party is required to tender evidence via affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is in genuine dispute "if the evidence is such that a reasonable jury could

3 – Opinion and Order

return a verdict for the nonmoving party." *Id.* At the summary judgment stage, courts must "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When the nonmoving party is self-represented, the court must construe his pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This rule particularly applies to pro se prisoner civil rights cases, where the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates."). A court is not, however, obligated to "comb the record" to find a reason to rule in favor of an inmate just because he does not have counsel. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

### A.    Eighth Amendment Claim

The Eighth Amendment prohibits cruel and unusual punishment and bars prison officials from "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner." *Balla v. Idaho*, 29 F.4th 1019, 1025 (9th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To survive summary judgment on an Eighth Amendment claim, "a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Id.* (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). Excessive lighting can constitute an Eighth Amendment violation. *Hoptowit v. Spellman*, 735 F.2d 779, 783 (9th Cir. 1985). The Ninth Circuit has clarified

that 24-hour cell lighting does not necessarily violate the Eighth Amendment when done "for a legitimate penological purpose." *Chappel v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013).

Turnidge moves for summary judgment on his Eighth Amendment claim on the grounds that there is no genuine factual dispute that Defendants acted with deliberate indifference because it is documented that he has post-traumatic stress disorder (PTSD) and the light "triggers psychiatric destabilization." *See* Plf. Mot. Summ. J., [ECF 27] at 3. He does not address the objective element of an Eighth Amendment violation. Defendants move for summary judgment on this claim on the grounds that Turnidge cannot establish a violation of his Eighth Amendment rights because TRCI's constant cell illumination serves a legitimate penological purpose and, even if he could, they are entitled to qualified immunity. [ECF 29] at 6–8.

### 1. Summary Judgment Based on Lack of Disputed Material Facts

Based on the record evidence, a reasonable fact finder could not find that the constant lighting in Turnidge's cell rises to the level of an objectively severe deprivation. *See Balla*, 29 F.4th at 1025; *Matsushita*, 475 U.S. at 587. Defendants offer evidence establishing a clear penological purpose for TRCI's constant cell illumination. *See Chappell*, 706 F.3d at 1058; *see also Celotex*, 477 U.S. at 323 (moving party has burden to demonstrate absence of genuine issue of material fact). Because of the configuration of the cells at TRCI, the cells must be illuminated for the security staff to see inside. [ECF 31] at ¶ 7. The record further establishes that TRCI configures the security lights in such a way as to minimize disturbance to prisoners. *See id.* at ¶ 11. Indeed, Turnidge's own evidence—the DLRGroup email—establishes that the security lights in TRCI are illuminated "just enough for the officer to see, about 1-foot candle." *See* Plf. Ex. 33, [ECF 34-1].

5 – Opinion and Order

Turnidge does not dispute Defendants' evidence. *See generally*, [ECF Nos. 1, 33, and 34]. Instead, he makes a conclusory argument that the controlling question is whether TRCI's in-cell lighting caused him serious harm. [ECF 33] at 3–4; *see also Matsushita*, 475 U.S. at 587 (if moving party meets its burden, the burden shifts to the nonmoving party to show the existence of a material fact for trial). This, however, misstates the law. The effect on a prisoner is a relevant factor in an Eighth Amendment analysis, but it is not the only one. *See Chappel*, 706 F.3d at 1058–59 (listing factors courts have considered in constant illumination Eighth Amendment claims). After carefully considering the record evidence, I find that no reasonable fact finder could conclude that the alleged discomfort of the constant illumination of cells at TRCI with occasional use of the brighter main lights results in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 Accordingly, Turnidge cannot establish the objective prong of an Eighth Amendment violation.

Similarly, I find that no reasonable juror could find that Defendants possessed a "sufficiently culpable state of mind" necessary to sustain an Eighth Amendment claim. *See Farmer*, 511 U.S. at 834. This requirement is met where prison officials act with deliberate indifference to the prisoner's health and safety—the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 834, 837. As stated above, Defendants provided evidence that they have taken steps to dim cell lights and minimize use of the brighter main lights, except for in the morning, and they assert a security interest in maintaining a low level of constant illumination for security checks. [ECF 30] at ¶¶ 7, 11, 13; [ECF 31] at ¶¶ 7–8, 11. Turnidge does not dispute this evidence. *See Matsushita*, 475 U.S. at 587 Accordingly, I find that there is no issue of fact for trial regarding the subjective factor of an Eighth Amendment analysis—whether Defendants disregarded a known risk.

6 – Opinion and Order

## 2. Summary Judgment Based on Qualified Immunity

Even if a triable issue of fact exists regarding Turnidge's Eighth Amendment claim, I find that qualified immunity shields Defendants from liability because it was not "clearly established" that their conduct would violate Turnidge's constitutional rights. *Mitchell v. Washington*, 818 F.3d 436, 447 (9th Cir. 2016). At the time of Defendants' actions, it was not clear that constant cell illumination violated the Eighth Amendment. *See e.g.*, *Chappell*, 706 F. 3d at 1058–59 (listing cases and noting that decisions on the constitutionality of continuous lighting were fact driven with mixed results). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mitchell*, 818 F.3d at 447 (internal quotation marks and citation omitted). The record shows that Defendants used constant low-level lighting and occasional bright lighting to illuminate TRCI cells for security reasons and made efforts to dim the lighting as much as possible. The cases that Turnidge cites in the Appendix of Authorities attached to his Complaint do not establish that the circumstances present in this case clearly violate the Eighth Amendment, and I have not found any caselaw supporting such a conclusion. Appx., [ECF 1-2] at 1–2; *see also See Chappell*, 706 F.3d at 1058 (it was not clearly established "that constant illumination violates the Eighth Amendment when done for a legitimate penological purpose"). Because it was not sufficiently clear that Defendants would have understood that TRCI's cell illumination for security purposes violated Turnidge's constitutional rights, I find that Defendants are entitled to summary judgment based on qualified immunity. *See Mitchell*, 818 F.3d at 447

### B. ADA and RA Claims

Defendants move for summary judgment on Turnidge's ADA and RA claims. Turnidge opposes Defendants' Motion on the grounds that I applied the wrong standard in assessing these

7 – Opinion and Order

claims when he moved for injunctive relief because prison housing conditions are services, programs, or activities. [ECF 33] at 4–5.

To state a prima facie case under Title II of the ADA, a plaintiff must show, among other things, that he is a qualified individual with a disability and that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity because of his disability. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Defendants concede that Turnidge's claimed PTSD qualifies as a disability but argue that Turnidge hasn't alleged any exclusion or discrimination based on his PTSD. [ECF 29] at 10–11.

I agree. Turnidge's apparent broad assertion that prison housing conditions[2] are services, programs, or activities is, as Defendants' point out, essentially an argument that incarceration itself is a service or program. This argument is foreclosed by the Ninth Circuit's decision in *Armstrong v. Wilson*, which recognized that although the ADA and RA "encompass[ed] prison activities," like showers, "incarceration itself" was not "a program or activity to which a disabled person might wish access." 124 F.3d 1019, 1023 (9th Cir. 1997) (internal citation omitted) (cleaned up). Moreover, Turnidge does not contend that he was, on account of his PTSD, denied benefits provided to other prisoners. *See cf. id.* at 1068 (including the provision of "toilet[s] and bathing facilities" as a service, program, or activity under the ADA and RA); *see generally*, [ECF 1]. Accordingly, there is no triable issue of fact on this claim, and I grant summary judgment in Defendants' favor on Turnidge's ADA and RA claims.

---

[2] Turnidge alleges he was placed in "incentive housing" at TRCI and alleges violation of the ADA and RA based on Defendants use of continuous cell lighting and the manipulation of cell lighting. *See e.g.*, [ECF 1] at ¶¶ 14, 28–31. There is no allegation that he was denied benefits, even housing benefits, because of his PTSD. *Id.*

8 – Opinion and Order

**C.**    **Fourteenth Amendment Claim**

Defendants move for summary judgment on Turnidge's Fourteenth Amendment claim because he has not alleged facts sufficient to show that he was a member of a protected class or that Defendants discriminated against him because of such membership. [ECF 29] at 11–12. Turnidge did not respond to this argument. *See generally*, [ECF 33].

To survive summary judgment on his Fourteenth Amendment Equal Protection Clause claim, Turnidge must show that Defendants intended to discriminate against him based on his membership in a protected class. *See Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022). A review of Turnidge's Complaint reveals that it is devoid of any allegation that he is a member of a protected class or that Defendants acted with any intent to discriminate. *See generally*, [ECF 1]. Accordingly, Defendants are entitled to summary judgment on this claim because there is no triable issue of fact.

**CONCLUSION**

I deny Turnidge's Motion for Summary Judgment [ECF 27], and I grant Defendants' Cross-Motion for Summary Judgment. [ECF 29]. I dismiss this matter with prejudice.

IT IS SO ORDERED.

DATED this ___6th___ day of ~~June~~ July, 2026.

_____
MICHAEL W. MOSMAN
United States District Judge

9 – Opinion and Order